## MONTGOMERY *vs.* MONTGOMERY.

If the defendant, in a suit by the husband, to annul a marriage on the ground of fraud, is an idiot, the complainant must procure the appointment of a guardian ad litem to appear and defend the suit for the wife.

Where no guardian ad litem is appointed for the defendant, in such a case, the complainant will derive no benefit from the tacit admission of the fraud charged in the bill, arising from the wife's suffering such bill to be taken as confessed against her.

A court of equity will not annul a marriage contract as having been fraudulent, upon the mere admission, by the defendant, of the facts charged in the bill.

A suit to annul a marriage, on the ground that the consent of one of the parites thereto was obtained by fraud, must be brought within six years after the discovery, by the aggrieved party, of the facts constituting the fraud.

The meaning of the provision of the statute relative to suits of that nature, which declares that a marriage may be annulled on account of force or fraud, *during the lifetime of the parties, or one of them*, is not that the suit can be brought at any distance of time after the right to institute it occurred, provided either of the parties is still living, but that the suit can only be brought during the lifetime of the parties, or during the life of one of them, and not afterwards.

The legal presumption is that a child born subsequent to the marriage of its mother, although begotten before that time, is the child of the husband. And the admission by a third person that the child was begotten by him, and not by the subsequent husband of the mother, is not evidence to rebut such legal presumption; in a suit to annul the marriage upon the ground that the consent of the husband to the marriage contract was obtained by fraud.

THIS case came before the chancellor upon a bill filed by the husband, against his wife, to annul the marriage contract between them, on the ground of fraud. The bill was filed in April, 1846, and stated in substance, that in October, 1834, the complainant, being then nineteen years of age, went to reside

Montgomery *v.* Montgomery.

with his maternal uncle, Ephraim Jones of Johnstown, and
continued to live with him until March, 1836; that the defen-
dant, who was the sister of Jones' wife, was residing in the
family and continued to reside there during the same time;
that about the first of January, 1836, his uncle persuaded him
to marry her, by representing to him that she was virtuous and
industrious and would make him a good wife, and by conceal-
ing from him the fact that she was then enciente; that a short
time after the marriage the defendant admitted she was with
child by the uncle of the complainant, and that they had con-
spired together to bring about the marriage, to shield them from
the disgrace of a discovery of their adultery; that the complain-
ant immediately ceased to cohabit with her; and that in March,
1836, she was delivered of a child, which was living at the time
of the filing of the bill in this cause; that he never had sexual
intercourse with her previous to their marriage, but that she
was at the time of such marriage pregnant by his uncle, and
that she well knew the fact and concealed it from the com-
plainant.

The defendant, who was proved by one of the witnesses to
be in a state of apparent idiocy, suffered the bill to be taken as
confessed against her; and it was referred to a master to take
proof as to the facts and circumstances stated in the bill, and
to report the testimony to the court, with his opinion thereon
Jones, the uncle of the complainant, was examined as a witness
before the master, and testified that he suggested to his nephew
that he had better marry the defendant, and advised him that
it was the best thing he could do; that her brother would
probably get them a lot of land out west, and that if they got
along well together, he, the witness, would see about their hav-
ing such a lot of land; that she was industrious, and so far as
the witness knew, was virtuous and would make him a good
wife; that the complainant said he would talk with her on the
subject; that afterwards, in pursuance of the advice of the wit-
ness and of the inducements which the witness held out to him,
the complainant married the defendant; that she was pregnant
at the time of such marriage, and was delivered of a child in

the month of March thereafter; that after the birth of the child the complainant insisted that it was not his, and left the house of the witness, leaving the defendant and her child there; and that he had never lived with her afterwards.

A brother-in-law of the last witness testified that the child bore a strong resemblance to him, and that he had charged him with being its father, and with having procured the marriage for the purpose of concealing the fact; that Jones made no denial, but said it could not now be helped if the public did charge him with it. The mother of the complainant also testified that the parties had not lived together since their separation in March, 1836.

The master reported that in his opinion the allegations in the complainant's bill were proved; that his assent to the marriage was procured by the fraudulent connivance of the defendant and Jones, the uncle of the complainant; and that the child mentioned in the bill was not the child of the complainant, but was illegitimate.

*J. A. Spencer,* for the complainant, then moved for a decree annulling the marriage, and declaring the child illegitimate.

THE CHANCELLOR. There are several objections in this case to the granting of the relief asked for by the complainant. His solicitor, who saw the defendant about two years previous to the time of his examination as a witness before the master, testified that she was then in a state of apparent idiocy. If that was the case, he should have procured the appointment of a guardian ad litem to appear and defend this suit for her; and the complainant cannot obtain the benefit of a tacit admissions of the fraud charged against her in the bill.

Again; the court does not annul a marriage contract upon the mere admission by the defendant of the facts charged in the bill. And I think the master erred in this case in supposing that the material allegations in the bill were established by the testimony before him. The only facts of importance that are proved are that the defendant was enciente at the time of her

Montgomery *v.* Montgomery.

marriage, late in the fall of 1836, and that she was delivered of a living child in the March following ; that the complainant was probably induced to marry her upon the recommendation of his uncle; and that he left her immediately after the birth of the child. That uncle does indeed leave it. to be inferred that he had not only been guilty of adultery with his sister-in-law, but that he had also been so base and unnatural as to persuade his nephew to marry her, by falsely representing her to be a virtuous woman, when he knew she was with child by himself. But to implicate the defendant in the conspiracy charged in the bill, the witness should have sworn to the facts charged. For, in the absence of any proof to the contrary, the legal presumption is that the child of which the defendant was subsequently delivered was the child of the complainant, although the testimony shows it must have been begotten before the marriage. And as the complainant and defendant had lived in the same family, for more than a year previous to their marriage, there is nothing to rebut the legal presumption on that subject but the tacit admission of Jones ; which admissions, not being upon oath, are not evidence of any thing, as between these parties. Nor can the court safely act upon such admissions. For the necessary result of receiving such evidence to annul a marriage, would be to produce collusion between parties, both of whom were willing to be released from the matrimonial tie. In this case, if the facts are as stated in the complainant's bill, it would have been much more creditable to Jones had he come out at once and done what was in his power to repair the wrong, by swearing to the whole truth, than to leave it as matter of suspicion only. And if this were the only difficulty in the case, I should refer it back to the master to take further testimony ; so as to give this witness another opportunity to swear to the truth of the allegations made in the bill, if they are in fact true.

It appears, however, from the complainant's own showing, that his right to relief was barred by lapse of time when this suit was commenced. The statute under which this bill is filed declares that a marriage may be annulled, on the ground that the consent of one of the parties was obtained by force or

Montgomery v. Montgomery.

fraud, *during the lifetime of the parties or one of them.* (2 R. S. 143, § 30.) The meaning of that provision, however, is that the suit can only be brought by the party whose consent has been obtained by force or fraud, or by some person who has an interest in contesting the validity of the marriage, during the lifetime of the parties to the marriage, or during the life of one of those parties, and not afterwards; not that the suit may be brought at any distance of time after the right to institute it occurred, provided either party is still living. The suit to annul a marriage, upon the ground that the consent of one of the parties thereto was obtained by fraud, must therefore be brought within the time limited by law for the commencement of suits in this court. And the fifty-first section of the article of the revised statutes relative to the time of commencing suits in equity, provides that bills for relief on the ground of fraud shall be filed within six years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not after that time. (2 R. S. 301.) The complainant was of full age as early as October, 1836; for he was nineteen at the time he came to reside with his uncle, two years previous to that time. And he states in his bill that the defendant admitted the facts constituting the fraud, as charged in the bill, soon after the marriage and previous to his leaving her in the spring of 1836. The six years allowed by law for bringing a suit to annul the marriage, on the ground of the alleged fraud, had expired several years before the filing of his bill. His right is therefore barred by the lapse of time; and his bill must be dismissed on that ground, even if the alleged fraud was now fully established by the proof. It would for that reason be a useless expense to refer the case back to the master to take further testimony in reference to the fraud charged in the bill.