E. B. *v.* E. C. B.

[New York General Term, November 4, 1858.    *Davies, Clerke* and *Ingraham,* Justices.]

———————•♦•———————

## E. B. *vs.* E. C. B.

A guardian *ad litem* for an infant over fourteen years of age should be appointed on the application of the infant, by petition ; and the court must be satisfied that the infant has made a voluntary nomination. No person can be appointed guardian, on his or her own application, and without the infant's consent.

Where an action is brought against a married infant, by her husband, to dissolve the marriage contract on the ground of impotence, the mother of the defendant has no interest in the matter which will allow her to intervene and become a party to the litigation ; especially after a guardian *ad litem* has been appointed for the infant, and the suit has proceeded to a decree, by which the marriage has been dissolved.

The mother therefore has no right to appeal from any decision made in the cause, so as to bring the merits thereof before the court for examination.

Although the court may hear her communications as *amicus curiæ,* that will give

no warrant for her, in that capacity, to appeal from the decision made upon her application.

In all actions brought to obtain a dissolution of the marriage contract, it is the duty of the court scrupulously to guard the proceeding from being used by the parties collusively, and not to suffer a judgment therefor without being fully satisfied that the cause specified in the statute really exists.

Whenever facts are placed before the court which create suspicion that there is collusion between the parties—especially when the defendant is a female under the age of twenty-one years—it is the duty of the court at once to institute such an examination as will satisfy them that no collusion exists. And if necessary, the court will order a reference, for that purpose.

*It seems,* that the mother, after the death of the father, has no right to the services of a minor child, and is not liable for its support.

THIS was an appeal from an order made at a special term, denying a petition presented by the mother of the defendant, as her natural guardian, (the defendant being an infant under the age of twenty-one,) praying that the decree obtained in this action, dissolving the marriage contract between the plaintiff and defendant, on the ground of the defendant's impotence, might be opened and the petitioner permitted to defend the action.

INGRAHAM, J. The parties to this action were married in October, 1857. The wife, at the time, was an infant of about 19 years of age. In November of the same year proceedings were commenced for a dissolution of the marriage contract upon the ground of impotence. A guardian was appointed for the infant defendant, who put in an answer, consented to a reference on two days' notice, to a hearing on ten days' notice before a referee; to a hearing before the court on four days' notice; and without any opposition permitted a decree to be taken against the defendant by default.

During these proceedings, the mother was not informed of them until the last of December, by a letter from the defendant. She immediately came to see her daughter and remained with her in New York for about a month. During that time she exerted her influence with the daughter, to induce her to resist the dissolution of the marriage contract. And for that

purpose the opinions of Drs. Mott and Simms were taken as to the alleged impotence; both of whom, by their affidavits, state that they had made personal examinations, and found the generative organs in a healthful state, and that they had no hesitation in pronouncing the defendant perfectly and wholly competent for the married state. On a subsequent occasion, by further affidavits these physicians reaffirmed their former statements as to the condition of the defendant on the 22d January, 1858. Their opinions are sustained by that of Dr. Griscom and Dr. Alden.

Shortly after this time the defendant was removed from her residence to some other habitation in New York, where her expenses were defrayed by the plaintiff, and her present place of residence has been concealed from the mother, all access to her prohibited, and since that time the daughter has refused to see her mother, or to return to her former home, but has avowed to her mother, by letters, her determination to part from her entirely.

The mother thereupon applied to this court by petition, in February, 1858, stating the above and other matters and claiming, as the natural guardian of the daughter, to be allowed to intervene; and asking to have the decree opened, to be appointed guardian ad litem for her daughter, and for leave to defend the action. She also charges other matters against the husband and guardian which it is unnecessary here to repeat.

In answer to this petition the plaintiff and defendant have both united to sustain the decree. They have, by affidavits, denied many of the allegations of the petitioner, and have furnished testimony of physicians, giving a contrary account of the daughter's health and condition, and fully affirming that such incompetency exists and that the defendant is totally unfitted for the marriage state.

An objection is taken to the right of the mother to intervene in this action, or in any manner to interfere with the proceedings. This view as to the petitioner's rights was

adopted by the justice, at special term. If that opinion is correct, then the petitioner not only had no right to interfere in the cause, but her appeal also is not well taken, because she has no standing in court, either as a party or as having any interest in the subject matter of the controversy, by which she can be made a party.

That the petitioner has no claim to be appointed guardian *ad litem* for the defendant is clear; even if the litigation between the parties was not closed.

The code (§ 116) prescribes the mode in which the guardian *ad litem* for a person over 14 years of age shall be appointed. This is to be on the application of the infant. No guardian would be appointed against such consent, and by the 63d rule it is provided that such appointment must be made on a petition of the infant proposing the guardian; and by the 64th rule the court is to be satisfied that the infant has made a voluntary nomination of such guardian. It would therefore be out of the power of the petitioner to be appointed such guardian without the infant's consent.

Has the mother then any other right to intervene in this action, as the protector of her daughter, or as entitled to her services during her minority, and being liable for her support and therefore as having an interest in the litigation?

The statute providing for a dissolution of the marriage contract, (2 *R. S. p.* 325,) after providing for various cases in which relatives or guardians or next friends might be parties, in section 38, provides that for physical incapacity of one of the parties, the action shall only be maintained by the injured party against the party whose incapacity is alleged; thus excluding from the action, as parties, any but the husband and wife.

Although the mother might have intervened under the rule in the ecclesiastical courts in England, I do not understand that the rule has been adopted in this country. The cases relied upon as showing that the chancellor adopted the same rule here do not sustain that position.

In *Devanbagh* v. *Devanbagh*, (5 *Paige*, 554,) he says that a provision of the revised statutes prohibiting a sentence of nullity from being pronounced on the confession of the parties without other evidence, is in accordance with the ecclesiastical law; but that does not mean that the ecclesiastical law controls such actions in this state. On the contrary, in that case the chancellor notices the provisions of the revised statutes, (2 *R. S. p.* 144, § 35,) which enacts that all such proceedings shall be conducted in the same manner as other actions in courts of equity.

The only question then would be whether the petitioner had any interest in the matter, which would allow her to become a party to the litigation.

Whatever may be her relations, or feelings of affection for her child, that is not the interest which the law recognizes as entitling a person to become a party to a litigation affecting the daughter's rights. There must be some other interest, of a pecuniary character, and I know of none unless it arises from the relation of parent and child, depending on the right of the parent to the services, and the obligation of the parent to provide for and support the child during its minority.

There is no doubt that such responsibility exists on the part of the father. Does it also rest upon the mother after the father's death? In *Bartley* v. *Richtmyer*, (4 *Comst.* 46,) Bronson, chief justice, says, "at the common law the mother has not like the father a legal right to the services of a minor child." (*South* v. *Denniston*, 2 *Watts*, 274. *Davies* v. *Williams*, 10 *Ad. & Ellis*, *N. S.* 725.) In 2 *Kent's Com.* 205, it is said: "The father is bound to support his minor children if he be of ability, even though they have property of their own, but this obligation does not extend to the mother."

In *the Commonwealth* v. *Murray*, (4 *Binney*, 487,) it was held in regard to a minor child, whose father was dead, that although he owed obedience and respect to his mother, yet the law gave her no control over him, and she was not entitled to the fruits of his labor.

I am at a loss to find any legal ground upon which to hold that the mother has any interest in the future prospects of her child who has married, even though such child be under age. · That she is still entitled to respect and affection from her, no one can doubt, but, as before remarked, that duty, or the feelings of love and affection which she may entertain for her child, do not give her any legal authority to intervene as a third party in an action between the husband and wife; or to exercise any authority over her or her interests.

In the present case, also, there is another obstacle which, even if such right existed in the mother, would stand in the way of allowing her thus to interfere. It is that before any such application was made by the mother the suit had progressed and terminated. A guardian ad litem had been appointed, and the case had been tried before a referee, who had found as a fact in the case that such incompetency as was relied on by the husband existed at the time of the marriage. That report, and the evidence, had been submitted to Justice Davies at special term, and he had also found the fact to be as stated by the referee, and had thereupon ordered the dissolution of the marriage contract. This fact, for the purposes of this action, must be considered as established, until the judgment is reversed, and the finding cannot be reviewed on appeal.

I am free to say that from a careful examination of the evidence I entertain much doubt whether any such incompetency existed at the time of the marriage. The evidence in favor of its existence *at that time* is slight, and there is evidence to show that it may have been produced since, and the distinction between the existence of the difficulty at that time and at the subsequent period when more thorough examinations were made, does not appear to have been kept in view, when this case was before the referee. Had the case been properly defended and the attention of the referee been more directly called to the inquiry whether the state of the defendant, at the time of the marriage, was the same as it was found to be

afterwards, more evidence would undoubtedly have been deemed by him to be necessary to establish that to be the fact. For such an inquiry, the evidence of the mother, the sisters or even the defendant herself should have been sought before the only fact upon which the plaintiff could succeed was considered to be established.

It is well said by the chancellor, in *Devanbagh* v. *Devanbagh*, (5 *Paige*, 557,) "In every case of this kind it is necessary that the court should proceed with the greatest vigilance and care, not only to prevent fraud and collusion by the parties, but also to guard against an honest mistake under which they may be acting merely from the want of proper medical advice and assistance." "If the allegations have neither been admitted nor denied by an answer on oath, the defendant should be examined on oath before the master as to the truth of these allegations."

It is unnecessary, however, to discuss this branch of the case, at the present time. If the petitioner has no right to intervene in this action, or to become a party thereto, it follows of course that she has no right to appeal from any decision made in the cause, so as to bring the merits thereof before the court for examination. It was said before the special term, and is repeated here by the petitioner's counsel, that the court may act on the information furnished by the petitioner acting as "*amicus curiæ.*" In this character her application was received by the justice at special term, and for the purpose of obtaining more information on the subject, he suggested to the referee a private examination of the defendant as to her wishes in continuing the litigation. The result of that examination is contained in an affidavit of the referee, which shows that the defendant objects to any interference on the part of the petitioner, and an utter unwillingness on her part to engage in any proceeding to vacate the judgment of the court herein.

The views of this case above expressed, if correct, establish that the petitioner has no right to intervene in this action, either on account of her relationship to the defendant or on

account of any interest which she may have in the litigation. That having neither a right to be a party from relationship or interest, there is no ground upon which she can ask to have the judgment opened or to be allowed to defend the action. That although the court may hear her communications as *amicus curiæ,* still that belonged exclusively to the special term, and gave no warrant for her, in that capacity, to appeal to the general term. The code provides for an appeal only by the party aggrieved. (§ 325.) This has been construed to mean a party to the record, or his representatives, and not any person who may feel aggrieved, when he is no party to the suit. It must be apparent, therefore, that the petitioner is in no way before the court so as to bring up for review the merits of that judgment, or to give the general term any authority for vacating or setting it aside, or granting a new trial. Even if we could do so, and permit the petitioner as the mother of the defendant to act in her behalf on account of her infancy, it would be of no avail against the wishes of the defendant. In December, 1857, she swears she was over 19 years of age. At the present time she is over 20 years of age. The lapse of a few months would bring her to the age of 21 years, when she would be relieved from the necessity of any guardianship, and be able to act independent of any control. If her determination and that of the plaintiff is as stated by them, to refuse all further examination into her case at the instigation of the petitioner, the delay would easily relieve them from her interference.

There is however a view of this case which is not free from difficulty. In all actions brought to obtain a dissolution of the marriage contract, whether for adultery or other causes, the court is charged with a duty which seldom devolves upon it, in other actions, and that is scrupulously to guard this proceeding from being used by the parties collusively, and not to suffer a judgment therefor without being fully satisfied that the cause really exists, as provided for in the statute. Whenever facts are placed before the court, which cause any suspicion

that there is any such collusion between the parties, no matter in what way the facts are brought to the knowledge of the court, and whether at a special or a general term, and more especially when the defendant in such an action is a female under the age of 21 years, who from her condition both as a married woman and an infant, is entitled to the special protection of the court, it is the duty of the court at once to institute such an examination as will satisfy them that no such collusion exists between the parties.    There are many circumstances in this case which certainly give a strange appearance to the mode in which the action has been prosecuted.    It was commenced while the parties were living in the same house.    A guardian *ad litem* was selected who was a friend of the plaintiff, living with him, not an officer of the court, as then required by the rules of the court.    The proceedings were kept secret from all the relatives of the defendant.    The judgment was obtained some time before the defendant was led to expect it.    The proceedings were conducted with a haste not usual in legal proceedings of an adverse character, and scarcely with that regard to the rights of an infant wife which a guardian *ad litem* should have given to it.    The complaint was sworn to on the 30th of November, 1857; the guardian *ad litem* appointed on the 8th December following; the answer put in on the same day, by his attorney; the cause noticed for hearing, on the same day, for the 10th December, and the guardian's attorney admitting due notice.    The reference ordered on the 10th December, and the referee's report made on the 14th December, founded on the testimony of only one physician who had examined her, and the opinion of another who had made no examination, and on the examination of Dr. Cummings in Washington, under a commission issued on the 9th and taken in Washington on the 10th December, and a final judgment on the 18th December, on a notice of hearing of four days.    To all these proceedings and all this haste, the guardian *ad litem* by his attorney was consenting in writing.    And when afterwards the mother, hearing of these

proceedings, came to her child and attempted to persuade her to inquire further into the legality of them, differences were created between them and they were finally separated, so that the mother has not since been permitted to see her child. Whether this was done at the request of the daughter or not is immaterial in reference to the point now under-discussion. And lastly, when the mother applies to the court to have an inquiry into the propriety of these proceedings, we find the plaintiff and defendant, the guardian *ad litem* and both attorneys uniting in their opposition to any inquiry, and all concurring in one effort, viz. to sustain the judgment of divorce and to prevent any interference on the part of the mother in obtaining a rehearing of the case.

This unnecessary haste, concealment from the relatives, and union of all parties in behalf of the judgment of divorce, requires some explanation. What necessity existed for such haste that even the guardian had to consent to shorten the time that the law had given to the parties, is not disclosed by these proceedings; and when in addition thereto, the disagreement between the physicians as to the existence of the alleged incompetency is remembered; the uncertainty whether it existed before the marriage, as no other proof was furnished than the opinion of Dr. Nichols from an examination afterwards; the neglect to examine the defendant, her mother, or her immediate relatives, all tend to throw doubt on the propriety of the course which the parties have seen fit to adopt in this matter. Had the parties intended to obtain such a judgment collusively, without any real cause existing for it, other than temporary disease which proper treatment might have removed, no plan could have been more successfully adopted, and none more easily effected. I do not wish to be understood as imputing to the parties that such improprieties really exist, or that such collusion has really taken place; but that the circumstances are such as to call upon the court to institute an inquiry whether there was any such collusion or other cause for further examination into the validity of this judgment.

E. B. *v.* E. C. B.

For this purpose it appears to me proper that the court should order a reference to one or more suitable persons to inquire whether there has been any such collusion between the parties in obtaining this judgment, and for that purpose to call before them the parties and such other witnesses as they may deem proper. A reference was ordered at the special term, but not for this purpose. The object of that order was to ascertain whether the defendant wished to have the judgment opened, and had no reference to the order above suggested.

If upon such reference the court shall be satisfied that no ground exists for the charge made by the petitioner, the judgment will then be free from the imputations which may now be made against it, and no cause exist for any further objections thereto.

CLERKE, J. I concur in the disposition of this matter, proposed in the opinion of Justice INGRAHAM; but I differ entirely from that portion of it which intimates that the impotency of the defendant, at the time of the marriage, was not satisfactorily proved. The permanency of the physical *obstruction* referred to by some of the witnesses may be questionable; but I have little doubt her whole nervous organization was so shattered, and her sexual organs were in such a state of chronic irritability, if not congenitally defective, that she was incapable of consummating her nuptials; and we have no sufficient reason to suppose that her impotency is curable.

DAVIES, P. J., concurred with Justice CLERKE.

Judgment directing a reference, to inquire as to the existence of collusion between the parties, in obtaining the decree of divorce.