## HARRIET C. LYON *vs.* CYRUS LYON.

Confessions are not, alone, sufficient to establish a charge of adultery. A sentence of divorce will not be given upon the sole confessions of the parties.

The foundation of the rule which forbids the granting a decree of divorce on the unsupported confessions of a party is the fear of collusion, and imposition on the court. When, however, the reason of the rule fails, the rule itself ceases. Hence, when the confessions are made under circumstances which entirely preclude suspicion of collusion, or imposition, the confessions will be received, and a decree granted thereon, without other evidence.

What circumstances were held, in this case, not to disprove collusion.

Evidence, in order to corroborate, must relate to some portion of the evidence which is material to the issue.

An event which happens before another cannot be said to furnish any evidence that the latter event happened. Nor, when there is no connection between two events, can either be said to give corroboration to the other.

Where witnesses testify to events occurring at different times, neither can corroborate the other.

And where witnesses testify in regard to separate acts of adultery alleged to have been committed by the defendant, at different times, but neither swears to any fact which shows, or tends to show, that adultery was committed by the defendant at the time stated by the defendant in his confession, they do not corroborate him in respect to the commission of the adultery to which the confession relates.

When the courts require confessions to be supported by collateral facts, those facts must be such as tend to prove the adultery charged in the complaint— not unimportant facts having no direct connection with, or bearing on, the issue between the parties.

ACTION for a divorce on the ground of adultery. The answer denied the several acts of adultery alleged in the complaint, and set up, as a defense, the adultery of the plaintiff. Issues having been settled, were tried at the Onondaga circuit, before a justice of this court without a jury; a trial by jury having been waived by the parties. The justice found certain facts in answer to the questions submitted by the issues; among others, the commission of adultery by the defendant on two different occasions. And as a matter of law, he found that the plaintiff was entitled to a judgment of divorce according to the prayer

Lyon *v.* Lyon.

of her complaint.   The defendant excepted to the findings of fact and of law, and appealed from the judgment.

*Mr. Kennedy*, for the appellant.

*Geo. Rathbun*, for the respondent.

*By the Court;* MULLIN, J.   The court below has found that the defendant did, on the 15th of July, 1855, and on the 1st of June, 1858, after his marriage with the plaintiff, commit adultery and have carnal connection with one Ulissa Weston, first at the house of Henry Weston, in Spofford, Onondaga county, and next at her own house in the said town.

The questions presented by this appeal are, whether the said findings are sustained by competent, legal and sufficient evidence?

The finding of the commission of the adultery in 1858 rests exclusively on the evidence of Amos Gillett, and of the adultery in 1855, on that of Franklin Hathaway.

Gillett testifies that in 1858 he rode with the defendant, at his request, to Mrs. Weston's; the defendant saying he could get what he wanted there.   They stopped in the street, and the defendant went into the house, saying he would go in and see what the chances were.   He came out, put out his horse, and said they would go in.   Both went in, and sat down, in the dining room, or kitchen; conversed awhile; and then all went into the parlor.   Mrs. Weston was baking, and she went into the kitchen.   The defendant followed her, leaving her sister and the witness in the parlor.   They were absent less than half an hour; the sister went out into the kitchen once, while Mrs. Weston and the defendant were absent; was gone two or three minutes, and returned.   The defendant came back into the parlor, and he and the witness left.   On their way back, the defendant said he got what he went after; that

he took her (Mrs. W.) into a room, a bed room, or bed sink. The witness inquired of him where he was when the girl went into the kitchen. He said he did not know where he could have been; he did not see her. The witness further testified that he made no discoveries; that he did not see or hear anything to excite his suspicions.

Mrs. Weston was the sister-in-law of the defendant, and, at the time of the occurrence, was a widow keeping house, and her sister residing with her.

Not only is there no proof of adulterous intercourse between Mrs. W. and the defendant, but there is not the slightest proof of familiarity—much less of indecent or immodest intercourse. The only evidence tending in the slightest degree to prove adultery is the declaration of the defendant, not only utterly unsupported by a single fact tending to corroborate him, as to the fact of adultery, but directly contradicted by the oath of Mrs. W. herself. This is giving to the declarations of a person not under oath, who by his declaration impeaches and degrades himself, greater weight than the oath of a person unimpeached, except by these declarations, and who, we are bound to presume is both truthful and respectable. I cannot think that the law will sanction such a conclusion. There is not a single act testified to which shows, or tends to show, that adultery was contemplated, much less committed. The charge rests wholly on the confessions of the defendant, and unless they are enough, standing alone, to establish the defendant's guilt, it is not proved.

The other act of adultery, in 1855, is found, not only without any evidence of its commission, but without even the confessions of the defendant to support it. Hathaway " believes " he saw the defendant and Mrs. W. alone once, in Henry Weston's parlor. The front door of the house was open, and the door from the front hall to the parlor was also open; the curtains were up; it was in the day time, Mrs. Weston lay on the lounge; the defendant sat

by her feet; her clothes were up so as to expose one leg nearly up to the knee; the defendant did nothing to her clothes; did not make any motions; he was not exposed, in any way. Mrs. W. and the defendant were the only persons in the house when the witness went in. He passed through the hall, from the front door to the kitchen, and saw them as he passed the parlor door. Mrs. Weston rose up and pushed down her clothes. The defendant, soon after the witness passed the door, went into the kitchen where the witness was. They afterwards went to the room, and the defendant told him to keep dark and say nothing. Last summer, at his shop, the defendant told the witness he had done wrong—had set a bad example before him—and cried, and hoped witness would forgive him; and wished him to say nothing about it. The witness, at the time this occurred, was 15 years of age. This young man is contradicted by Daniel Lyon and Shepard Earl.

It will hardly do to hold that a brother-in-law may not, in open day, without concealment, or effort at concealment, sit on the same lounge with his widowed sister-in-law without raising the presumption of adultery, even if it should happen that she was not as careful in the arrangement of her dress as if he was an entire stranger. Yet this is all the evidence of criminality, aside from the defendant's declarations, in the case.

No one could hesitate, for a moment, after reading the evidence in this case, to pronounce the case totally without evidence of adultery, unless full credit is given to the defendant's confessions.

We are, then, next to inquire whether the defendant's confessions can be the basis of a decree of divorce; and if so, under what circumstances.

It is said in *Shelford on Marriage and Divorce*, 407, that to prove adultery, confessions alone cannot be received, * * for without this restriction, there would be no check

upon the collusion and imposition that might be practiced on the court. But a confession may be received, accompanied by collateral evidence which, when taken together, form the strongest possible proof. Again, at page 410, it is said : " Confession generally ranks high in the scale of evidence; what is taken *pro confesso* is considered as indubitable proof. The plea of guilty, by the party accused, excludes further inquiry. *Habimus confitentem uum* is demonstration, unless undue motives can be assigned to it. But though confessions will support charges of the highest nature, as treason, murder, &c., they are not, alone, sufficient to establish a charge of adultery. A sentence of divorce will not be given upon the sole confessions of the parties. The principle upon which the rule is founded is a fear of collusion between the husband and the wife."

Again, at page 411, it is said : " Confession is a species of evidence which, though not inadmissible in cases of adultery, is to be regarded with great distrust; and though it is not absolutely excluded, but is received in conjunction with other circumstances, yet it is, on all occasions, to be most accurately weighed. Confession of adultery, when perfectly free from all taint of collusion, when confirmed by circumstances and conduct, ranks amongst the highest species of evidence." (*Doe* v. *Roe,* 1 *John. Cas.* 25. 2 *Greenl. Ev.* § 45. *Holland* v. *Holland,* 2 *Mass.* 154. *Baxter* v. *Baxter,* 1 *id.* 346. *Montgomery* v. *Montgomery,* 3 *Barb. Ch.* 132. *Betts* v. *Betts,* 1 *John. Ch.* 197.)

The foundation of the rule which forbids the granting a decree of divorce on the unsupported confessions of a party is the fear of collusion and imposition on the court. When, however, the reason of the rule fails, the rule itself ceases. Hence, when the confessions are made under circumstances which entirely preclude suspicion of collusion or imposition, the confessions will be received, and a decree granted thereon without other evidence. (*Billings* v. *Billings,* 11 *Pick,* 461.)

Let us now proceed to inquire, 1st. Whether the confessions are shown to have been made under circumstances which preclude suspicion of collusion; or, 2d. Whether the confessions are supported or corroborated by other circumstances, so as to justify the court in acting upon them.

1. Do the circumstances under which the confessions were made disprove collusion? Gillett, who swore most distinctly to the defendant's confessions, shows that he was taken along by the defendant with the knowledge that he was going to have connection with Mrs. Weston. He remains in the carriage, taking care of the horse while the defendant goes into the house to ascertain whether an opportunity is offered to him to accomplish his purpose. The witness is then invited into the house, Mrs. Weston, her sister, witness and the defendant remain for some half an hour in company, in the kitchen; they all then go into the parlor; the witness remains with the sister, while the alleged adultery is being committed; and when the defendant returns, he and the witness return home, and on the way, the defendant, in answer to the witness' inquiries, confesses to have had connection with Mrs. Weston in the bed, or in a room, adjoining the kitchen. Now to my mind, this evidence, so far from disproving collusion, demonstrates it. The whole story is so monstrous—makes the defendant so much of a brute, and the woman so much worse than a brute—that I cannot suppose that such intercourse could occur, except in the imagination of some one base enough to conceive it.

We are called upon to believe that the brother-in-law took into his confidence a stranger, after four or five weeks' acquaintance, and announced to him that he was going to commit adultery with his widowed sister-in-law, and that he did commit it in the room adjoining the one in which the witness and Mrs. Weston's sister sat, when they were liable to be caught any moment during the time they were together. If there was not collusion, there is reason to

fear that the witness has drawn on his imagination for his facts.

In the case of Hathaway, the evidence of collusion or corruption is still more apparent. The facts sworn to do not tend to prove adultery. There was therefore nothing to confess; and the confession is at once absurd and incredible.

2. Are there any facts or circumstances, in the case, to corroborate the confessions? Evidence, in order to corroborate, must relate to some portion of the evidence which is material to the issue. (1 *Greenl. Ev.* § 381, *note* 3.) Gillett testifies to an occurrence in 1858, Hathaway to one in 1855. Neither, therefore, could corroborate the other; nor could either corroborate the defendant in regard to the commission of the adultery to which the confession relates. Neither of the witnesses swears or professes to swear, to the adultery. If it is proved it is by the confession of the defendant; and neither witness swears to any fact which shows, or tends to show, that adultery was committed, at the time stated by the defendant.

If it is said that the occurrence sworn to by Hathaway corroborates the confession as to the adultery at the time testified to by Gillett, it is a sufficient answer to say that Hathaway testifies to an occurrence three years before that testified to by Gillett. An event which happens before another cannot be said to furnish any evidence that the latter event occurred. If it is said that it shows an intimacy which would justify the belief that when an opportunity offered criminal intercourse would result, I am at a loss to understand how it would corroborate the confession, or in any manner tend to prove the subsequent adultery. There is no connection between the two events, and neither can be said to give corroboration to the other. If there could be corroboration, the last would be most likely to corroborate the first. But when the courts require confessions to be supported by collateral facts,

those facts must be such as tend to prove the adultery charged in the bill—not unimportant facts having no direct connection with, or bearing on, the issue between the parties.

I am of the opinion that the learned justice erred in finding either charge of adultery proved; and that the judgment should be reversed, and a new trial ordered, with costs to abide the event.

[ONONDAGA GENERAL TERM, October 1, 1861. *Mullin, Bacon* and *Allen,* Justices.]