(37 Misc. Rep. 26.)

## STEIMER v. STEIMER.

(Supreme Court, Special Term, New York County. January, 1902.)

1. MARRIAGE—ANNULMENT—VACATING DECREE.

Where the marriage of an infant daughter has been annulled for fraud, the mother of the infant will be allowed, as an amicus curiæ, to attack the decree on the ground that it was procured by collusion between the infant and her husband.

2. SAME—EVIDENCE.

Code Civ. Proc. § 1753, provides that, in an action brought to annul a marriage, a judgment annulling the same shall not be rendered by default or upon trial, without proof of the facts alleged, and that the declaration or confession of either party shall be insufficient for that purpose. *Held*, that a marriage cannot be annulled on the confession of the defendant alone, and the fact that plaintiff was permitted by the referee to confirm the confession by evidence that defendant had made the same statements to him does not render the confession competent.

3. SAME—FRAUD

A marriage cannot be annulled for fraud where the parties after the commencement of the action live together with full knowledge of the facts constituting the fraud.

Action by Francis A. Steimer against Florence Steimer. Judgment for plaintiff. Motion to show cause why the judgment entered, annulling a marriage, should not be set aside, as being fraudulent and in violation of law. Motion granted.

CLARKE, J. This is a motion upon an order to show cause, returnable in special term, part 3, and referred by the justice then presiding to me for determination why the judgment herein, entered on the 10th of September, 1901, annulling a marriage, should not be vacated and set aside as being fraudulent, collusive, in violation of the statute, and contrary to law. The affidavit upon which the order to show cause was granted was made by the mother of the defendant, a girl of 19; and, while the affiant has no other standing in court than any other stranger to the action, yet the court in such proceedings may act upon the suggestion of any amicus curiæ, or even sua sponte. The general term held in E. B. v. E. C. B., 28 Barb. 299, in a case similar to the one at bar, on appeal from an order denying a petition presented by the mother of an infant defendant, praying that the decree annulling the marriage between the plaintiff and the defendant might be opened, that, while the mother had no standing as a party, the court would hear her communication as an amicus curiæ, and that, "in all actions brought to obtain a dissolution of the marriage contract, it is the duty of the court scrupulously to guard the proceedings from being used by the parties collusively, and not to suffer a judgment thereof without being fully satisfied that the cause specified in the statute really exists," and that "whenever facts are placed before the court which create a suspicion that there is collusion between the parties, especially when the defendant is a female under the

age of twenty-one years, it is the duty of the court at once to institute such an examination as will satisfy it that no collusion exists."

The plaintiff, now 46 years of age, became acquainted with the defendant when she was about 14 years of age, and had intercourse with her a number of times. In September, 1900, when she was 17 years of age, she was discovered by her mother to be enceinte. She told her mother that the plaintiff was responsible for her condition, that he had promised to marry her, and that she had been in the habit of meeting him for several months at various hotels. The mother took the daughter to see the plaintiff, and demanded that he keep his promise to her. Two days after that interview, on September 24, 1900, the mother took the daughter to her husband's attorney, and the girl repeated to him that plaintiff was responsible for her condition, when and where she had met him, and the promises he had made. On the following day, plaintiff, upon request, called at said attorney's office, admitted his relations with defendant, and asked what he was expected to do. He was told the only reparation he could make was marriage. He ridiculed this suggestion, and stated that the girl had slept for years with her father as his mistress. He was told to employ a lawyer with whom matters could be discussed. This he promised to do, but called again, and stated that he did not require a lawyer, asked for an interview with the defendant, obtained it, and subsequently, on October 5, 1900, plaintiff and defendant were married by a minister, and went to plaintiff's apartment to live. There the child was born on the 21st of February, 1901. On the 18th of March, 1901, the complaint herein was verified, which alleged that plaintiff was induced to marry defendant, who claimed, asserted, and pretended that she was a virtuous girl, and that she had never had sexual relations with any other person than with the plaintiff, and that she was then pregnant by reason of sexual intercourse with him; that except for such claim he would not have married her; that he relied upon such pretense, and, acting under the belief of the truth thereof, married her; that said claim, etc., was absolutely false, and made to deceive and entrap him; that on or about March 10, 1901, he learned for the first time that defendant before her marriage had been intimate with one ———, and that the child of the defendant was not the child of plaintiff, and that prior to such marriage defendant had lived in a state of frequent sexual intercourse with some other person than plaintiff; that since the discovery of these facts plaintiff had not cohabited with defendant,— and prayed that the marriage be declared to be null and void, and the child adjudged to be illegitimate. On April 22, 1901, an order was entered, on consent, referring the issues. The stipulation on which this order was entered was signed by plaintiff's attorney and by an attorney for defendant. The referee makes an affidavit that the first hearing was on May 1, 1901; that on that day there appeared before him plaintiff's attorney, the plaintiff, and the defendant; that during the hearing the defendant told him that she was 18 years old January, 1901; that he asked her if she had informed her attorney that she was under 21, and she replied she had; that

he then told her that her attorney had no right to allow her to sign the answer that she had signed, and that she could only appear by a guardian ad litem appointed by the court; that plaintiff then stated defendant had stated her age correctly; and that the referee then refused to proceed with the case. On June 3, 1901, upon petition of defendant, affidavits, and consent of the person who had appeared as defendant's attorney, an order was made appointing the latter guardian ad litem of the defendant. On June 17, 1901, an order was made, on consent of plaintiff's attorney and the said guardian ad litem, referring the issues to the former referee. On June 21, 1901, there appeared before said referee plaintiff's attorney and said guardian ad litem, who said they were ready to proceed. An attorney was present with defendant's mother, who asked the guardian ad litem's permission to aid her in defendant's defense, but said guardian said she was able to take care of the case herself, unaided. The referee then asked plaintiff's attorney what witnesses he had, who replied, "The plaintiff and defendant themselves." Discussion then arose as to the competency of the defendant to give any testimony against herself and against the child in such an action; the referee stating that his reading of the Code led him to believe that such evidence was neither competent nor permissible, and that, if competent, it would not be sufficient, as the guardian ad litem must necessarily raise that point,—and advised the guardian to carefully examine the authorities. As this referee was about to go to Europe, he subsequently, on July 2, 1901, at the request of plaintiff's attorney sent him his resignation as referee, and sailed on July 6th. On July 31, 1901, upon the consent of plaintiff's attorney and the guardian, the resignation of the former referee, and a waiver of notice of application for such order by said guardian, an order was made referring the issues to a new referee. The first and only hearing before this referee was on August 20, 1901. The only witnesses examined or proofs offered before the referee were the plaintiff and the defendant. Of this proceeding the mother of defendant had no knowledge until some time after the entry of the decree. The sole ground for the annulment of this marriage between a man of 45, a widower, with two children, 21 and 17 years old, and a girl of 17, with whom he testifies that he had intercourse many times before marriage, was that he was deceived by her into believing that she was a virtuous girl, and that the child of which she was pregnant was his, and that she confessed to him about two weeks after the birth of the child that he was not its father. The plaintiff testified to her confession, made to him by the defendant, and then called the defendant, who admitted the truth of such confession. Indeed, the referee, after stating the facts constituting the alleged fraud, finds, "All of which facts have been testified to by the defendant upon this trial." But section 1753 of the Code of Civil Procedure provides:

"In an action brought, as prescribed in this article [article 1, tit. 1, c. 15; action to annul a void or voidable marriage], a final judgment, annulling the marriage, shall not be rendered by default for want of an appearance or pleading, or upon the trial of an issue without proof of the facts, upon

which the allegation of nullity is founded. And the declaration or confession of either party to the marriage is not alone sufficient as proof; but other satisfactory evidence of the facts must be produced."

In Chambers v. Chambers (Sup.) 32 N. Y. Supp. 876, Mr. Justice Beekman, in refusing to confirm the report of a referee, in an action brought to annul a marriage, on the ground of an alleged previous marriage of the defendant, held that where the only proof of the previous marriage consisted of the declaration of the defendant, testified to by the plaintiff, and the marriage register, purporting to contain an entry of the marriage in question, the statute (section 1753) was not satisfied. He said:

"The action is one of grievous character, and the judgment asked for should not be granted unless the proofs are competent, clear, and convincing, especially as there is a child by the marriage, whose status would be gravely affected by the action of the court."

In the case at bar the record shows beyond question that no attempt was made to comply with the statute, and that there was no proof other than the alleged confession of the infant defendant. The fact that the plaintiff testifies that the defendant had previously confessed to him what she confessed in court added nothing to the character or weight of the confession itself. "A sentence of divorce will not be given upon the sole confessions of the parties. The foundation of the rule  *  *  *  is the fear of collusion and imposition on the court." Lyon v. Lyon, 62 Barb. 138; Madge v. Madge, 42 Hun, 524; Fowler v. Fowler, 29 Misc. Rep. 670, 61 N. Y. Supp. 109; Montgomery v. Montgomery, 3 Barb. Ch. 132. Section 1750 of the Code provides:

"But a marriage shall not be annulled  *  *  *  on the ground of fraud, if it appears that, at any time before the commencement thereof [i. e. of the action] the parties voluntarily cohabited as husband and wife, with a full knowledge of the facts constituting the fraud."

The plaintiff swore in his complaint "that since the discovery of these facts the plaintiff has not cohabited with the defendant, and cannot longer live with or recognize the defendant as his wife, or allow her to preside in his household," and he swore at the trial that he had not cohabited with the defendant after learning the facts. But he testified that before the marriage she said he was responsible for her condition, and then:

"Q. And what, if anything, did she tell you about having intercourse with any other person at that time? A. Well, she did make some such statement to me, that I really didn't believe much about it at the time."

And it appears that from the time he took her to his apartment to the present time she has lived and is still living there with him. In his own answering affidavit on this motion he says that she is remaining in the house "occupying the position of a housekeeper,— doing the cooking and the work of the house." And in an affidavit tendered by him she says:

"I have remained in the same house, but not occupying the same room or one communicating with his, and acting entirely as his housekeeper or servant, taking care of the rooms, and cooking and serving his meals. He has kept no other servant."

Taking into consideration the 2 years, from 15 to 17, of the girl's life, that plaintiff admits having intercourse with her, their subsequent marriage, and that they still reside in the same small flat, it is too much to ask the court to believe that since the 10th of March, 1901, the requirement of the statute as to noncohabitation has been complied with. The power and influence of this older man on this young girl, powerful enough, even if his claim be well founded, to induce her to consent to change her condition from wife to mistress and to bastardize her child, the curious history of the two references, the violation of positive prohibitory provisions of the Code, the consent of the guardian ad litem to reference, lead me to the inevitable conclusion that this motion must be granted, and that the judgment must be vacated and set aside, as obtained by collusion and imposition on the court. It is needless to say that on these papers the facts confessed to by the defendant are denied by her stepfather, and that the main facts, which convince me of the necessity of vacating the judgment, were not known, and could not have been known, to the court which granted the decree. No such judgment should stand. Motion to vacate granted, without costs.

Motion granted, without costs.